**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

| | |
|---|---|
| *IN RE MISSION HEALTH*<br>*ANTITRUST LITIGATION* | **Case No: 1:25-mc-00010-MR**<br>**Related Case No.: 1:22-cv-00114-MR** |

### MEMORANDUM IN SUPPORT OF NON-PARTY LIFEPOINT'S
### MOTION TO QUASH SUBPOENA OR FOR A PROTECTIVE ORDER

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, non-party Lifepoint Corporate Services, General Partnership ("Lifepoint") submits this memorandum in support of its motion to quash HCA's re-issued subpoena for a Rule 30(b)(6) deposition of Lifepoint or, in the alternative, for a protective order limiting the deposition's scope and imposing cost sharing.

### I. INTRODUCTION

Lifepoint should not be required to spend dozens of additional hours of its executives' time plus tens (if not hundreds) of thousands of dollars in additional legal fees to prepare its executives to answer deposition questions that will, almost assuredly, never be asked. Yet, that is precisely what HCA's re-issued deposition subpoena would require Lifepoint to do. In a 4-hour deposition, HCA cannot possible cover all 19 of the topics on which its subpoena would require Lifepoint to prepare—many of which cover multiple contractual provisions in 165 separate payor contracts spanning nearly 4,000 pages. Worse, HCA could obtain the answers to its questions simply by reviewing the documents that Lifepoint is producing. There is no reason to require non-party Lifepoint to shoulder this enormous burden, especially after Lifepoint has already incurred more than $140,000 in outside counsel fees (not subject to cost sharing) and diverted many employee hours due to Defendants' overbroad and unduly burdensome subpoenas.

The re-issued deposition subpoena should be quashed. In the alternative, the topics should be substantially narrowed, and HCA should be ordered to pay Lifepoint's fees and costs (including Lifepoint's diverted employee time) associated with the re-issued subpoena.

## II. PROCEDURAL HISTORY

**A.      Defendants issued the original subpoenas for documents and testimony.**

In July 2024, Defendants served near-identical subpoenas for documents on four "Duke Lifepoint" ("DLP") hospitals affiliated with Lifepoint. ECF #12-1 (original document subpoenas). Each subpoena requested 24 categories of documents, some with many subparts, for a time period spanning more than 8 years. *Id.* Lifepoint timely objected in writing that the subpoenas were overbroad, unduly burdensome, and called for some of Lifepoint's most highly confidential and competitively sensitive information. *See, e.g.*, ECF #3-3 (objections), ECF #12-2 (letter).

For the next six months, counsel for Lifepoint engaged in an extensive meet and confer process with Defendants' counsel in an attempt to narrow the subpoenas' scope. That process included at least nine videoconference meetings between counsel, along with numerous emails and phone calls. ECF #12 (Holt Decl.) ¶ 4. In January 2025, the DLP Hospitals produced documents to Defendants in response to the subpoenas. *Id.* ¶ 8. In February 2025, Defendants issued a subpoena for a Rule 30(b)(6) deposition of Lifepoint. ECF #12-4 (original deposition subpoena). Lifepoint objected that the original deposition subpoena was extremely broad, extraordinarily burdensome, and called for Lifepoint's most confidential information.

In February 2025, HCA moved to compel Lifepoint to produce additional documents in response to its subpoenas. ECF #1 (motion). That same month, Lifepoint moved to quash the subpoenas for documents and deposition and for entry of a protective order. ECF #10 (motion).

2

**B. The Court narrowed the document subpoenas to a small number of topics, required HCA to pay Lifepoint's future expenses in gathering and producing those documents, and quashed the deposition subpoena without prejudice.**

On April 8, 2025, the Court granted in part and denied in part HCA's motion to compel Lifepoint's production of documents, and granted without prejudice Lifepoint's motion to quash the deposition subpoena. ECF #28 (Order). The Court explained that Defendants had engaged in what appeared to be "[v]ery abusive tactics" and had sought production of "[an] astounding volume of documentation." *Id.* at 7; *see also id.* at 20 (holding that this lawsuit "does not warrant the 'Send me the National Archives' theory of discovery"). The Court quashed the subpoena for documents in large part, requiring Lifepoint to produce only six sets of documents: (i) contracts with relevant payors, (ii) general ledger revenues and expenses, (iii) audited financial statements, (iv) negotiations with insurers, (v) documents relating to possible or actual termination in any health plan, and (vi) business planning and assessment documents.[1] *Id.* at 21-22.

Because the subpoenas had already imposed enormous burden and expense upon Lifepoint, the Court ordered HCA to bear Lifepoint's costs of compliance since April 8, 2025 for Lifepoint's gathering and production of documents. *Id.* at 16 (holding that, because "the discovery sought by [HCA] exceeds what is proportional to the needs of the case," HCA "must bear such additional costs hereafter incurred by DLP Hospitals"). The Court observed that "[t]here is no doubt DLP Hospitals . . . have already . . . incurred significant expense in producing their materials to date, and further production will substantially increase the expense." *Id.* at 15. As explained in its

---

[1] Although the Order to produce documents was directed at the DLP Hospitals, the DLP Hospitals and Lifepoint are corporate affiliates with overlapping document custodians and which share the same in-house and outside legal counsel; therefore, unless otherwise indicated, this motion uses the terms "DLP Hospitals" and "Lifepoint" interchangeably.

supporting papers, Lifepoint had already incurred more than $100,000 in outside counsel fees at that time, including to oppose the subpoenas' extreme overbreadth.  ECF #23 (Holt Decl.) ¶ 4.

Regarding the subpoena for deposition, the Court held that "the deposition topics are overly broad, and unduly burdensome."  ECF #28 (Order) at 16; *see also id.* ("[T]he burden imposed by the vast array of topics and timespan [for the deposition], presents the same undue burden that Defendants' document requests presented.").  Significantly, the Court did not find that *any* of the deposition topics called for information with substantial probative value, holding instead that "some of the topics for the noticed depositions ***could be minimally relevant***."  *Id.* at 18 (emphasis added); *see also id.* at 17-18 (citing the "apparent minimal relevance of much of the information").  Applying the Fourth Circuit's directives from *Virginia Department of Corrections v. Jordan*, 921 F.3d 180, 193 (4th Cir. 2019), the Court emphasized that the deposition topics "mirror[ed] the document requests," which made the absence of an explanation by Defendants for the topics' probative value particularly "glaring."  *Id.* at 17; *see also Virginia Dep't of Corr.*, 921 F.3d at 194 (holding that "[i]f [a non-party's] document production has already provided the substantive information," then "a Rule 30(b)(6) deponent would likely just repeat that same information").

In granting Lifepoint's motion to quash the deposition subpoena without prejudice, the Court ordered that Defendants "file and serve the particularized lists of topics they actually intend to cover in the depositions."  ECF #28 (Order) at 19.  The Court held that any such depositions must be "more limited" in scope than the documents that Lifepoint produced.  *See id.* at 19 n.14 ("Considering the nature of this case and what the Defendant may glean from the data that may be disclosed in the documents requested, the Court has endeavored herein to provide the Defendants greater latitude in the documents they seek.  The Defendants, however, have made no compelling

4

argument as to how these non-party depositions would provide much more.  Therefore, these [non-party depositions] should be more limited.").

**C.**     **Pursuant to the Court's April 8, 2025 Order, Lifepoint has produced 165 separate contracts spanning nearly 4,000 pages and is reviewing more than 25,000 documents for responsiveness and privilege pursuant to agreed-upon search strings.**

Lifepoint quickly got to work to fulfill the Court's Order to produce certain documents. On May 7, 2025, after giving written notice to payors of the Court's Order to satisfy its contractual confidentiality obligations, Lifepoint produced to the Defendants 165 separate payor contracts spanning nearly 4,000 pages.  ECF #32 (Holt Decl.) ¶ 4.

In addition, after running several variations of proposed search strings at Defendants' request, Lifepoint has gathered more than 25,000 *additional* documents (including family members) that hit for those search strings.  *Id.* ¶ 5.  Those search strings span 10 Lifepoint/DLP custodians.  *Id.*  Counsel for Lifepoint is currently reviewing those search string hits for responsiveness and privilege, after which the responsive, non-privileged documents will be produced to Defendants.  *Id.* ¶ 6.  Lifepoint will produce those responsive, non-privileged documents regardless of the outcome of this motion.

**D.**     **HCA re-issued a subpoena for Lifepoint's deposition testimony, and the re-issued subpoena continues to impose extraordinary burden and expense upon Lifepoint.**

On April 22, 2025, HCA re-issued a deposition subpoena and notified Lifepoint that it intended to take a 4-hour Rule 30(b)(6) deposition of Lifepoint.  *Id.* ¶ 7 & Ex. A (re-issued subpoena).  Lifepoint objected that, like its predecessor, the subpoena was overbroad, unduly burdensome, and called for Lifepoint's most confidential and competitive sensitively information. *Id.* ¶ 8.  Lifepoint requested that the subpoena be significantly narrowed and that Defendants bear all associated fees and costs.  *Id.* ¶ 9.  Unfortunately, despite meeting and conferring on these issues, and the parties have reached an impasse, requiring this motion.  *Id.* ¶¶ 8-11.

5

### III. LEGAL STANDARD

"Nonparties [like Lifepoint] faced with civil discovery requests deserve special solicitude." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 194 (4th Cir. 2019); *see also id.* at 189 (holding that "courts must give the recipient's nonparty status special weight").

Two rules governing discovery are most relevant here.

*First*, under Rule 45(d)(3), subpoenas that subject a person to undue burden or expense *must* be quashed or modified. *See* Fed. R. Civ. P. 45(d)(3) (providing that district courts "***must*** quash or modify a subpoena that . . . subjects a person to undue burden") (emphasis added).

*Second*, under Rule 26(c)(1), district courts have broad authority to craft orders that protect non-parties from undue burden or expense, including by "forbidding the . . . discovery," requiring the "allocation of expenses," or "limiting the scope of . . . discovery to certain matters." *See* Fed. R. Civ. P. 26(c)(1).

### IV. ARGUMENT

A.   **The re-issued deposition subpoena to Lifepoint should be quashed because it would require dozens if not hundreds of hours of preparation simply to confirm information in documents that Lifepoint has produced, and Lifepoint has already incurred enormous burden and expense in responding to Defendants' subpoenas.**

Like the original deposition subpoena to Lifepoint, the re-issued deposition subpoena imposes an undue burden on Lifepoint and should be quashed. Under Rule 45(d)(3), a subpoena that subjects a person to undue burden "***must***" be quashed or modified. Fed. R. Civ. P. 45(d)(3) (emphasis added). Even before Lifepoint's current efforts, the Court held there is "no doubt" that Lifepoint has "already . . . incurred significant expense in producing [its] materials to date" and that the deposition topics have only "minimal relevance." ECF #28 (Order) at 15, 17.

The re-issued subpoena fares no better. Although the re-issued subpoena eliminates *some* deposition topics, it *broadens* others. And while HCA may claim that it reduced the number of

topics, that is largely a matter of formatting, as the re-issued subpoena folds previously standalone topics into subparagraphs. For example, while the original subpoena included a standalone topic on "certificate of need" (ECF #12-4 (original subpoena) at Topic 18 ("Any Certificate of Need application made by you since 2016 . . . ."), the re-issued subpoena makes that topic a subparagraph and broadens it (ECF #32-1 (re-issued subpoena) at Topic 3(b) ("The effect of Certificate of Need laws on Your business planning and/or assessment of opportunities to grow or reduce Your presence in the Relevant Region.")). Similarly, the re-issued subpoena *adds an entirely new topic* of payor contract negotiations. *Id.* at Topic 3(e) ("Whether negotiations included requests to modify, add, or remove contractual language that allows You to object or respond to changes in a Relevant Payor's protocols, policies, or procedures or object to or respond to actions taken by a Relevant Payor that result in a material change to the economic value of the contract."). When counting each separate paragraph as a topic (even if denominated as a subparagraph), *the re-issued subpoena contains 19 distinct topics*. *See id.* That remains grossly overbroad.

Preparing Lifepoint's executives to testify on these topics would be extraordinarily burdensome and time-consuming. Take subparagraph (b) of Topic 2, which require the witness(es) to be prepared to testify regarding "[t]he existence of (or negotiation for or consideration of) and/or effect of any contractual provision that prevents or limits a Relevant Payor from using Patient Steering."[2] *Id.* at Topic 2(b). Lifepoint has produced *165 separate payor contracts* to HCA— which collectively span *nearly 4,000 pages*. ECF #32 (Holt Decl.) ¶ 4. Preparing Lifepoint's

---

[2]    "Relevant Payor" is defined as "Blue Cross and Blue Shield, Cigna HealthCare, United HealthCare, Aetna (including Coventry), and MedCost." ECF #32-1 (re-issued subpoena) at Definitions, ¶ 16. "Patient Steering" is defined as "any program, mechanism, plan, or activity by a Payor to influence members' choice of healthcare provider, including but not limited to: Narrow Networks, Tiered Networks, centers of excellence, price transparency, reference pricing, bundled payment, utilization management tools that vary members' ease of access to care, and benefit designs that vary members out-of-pocket costs." *Id.* ¶ 10.

executives to testify about the "existence" of such contractual provisions across 165 contracts and 4,000 pages would take many hours, if not days, of work. And that is only a part of subparagraph (b) of Topic 2. Defendants' search strings for the "negotiation" of those contracts resulted in 12,890 separate documents (including families). *Id.* ¶ 5. Identifying the documents that pertain to the negotiation of such contractual provisions and then preparing Lifepoint's executives to testify about them may take dozens if not hundreds of hours of additional work.[3] *Id.* ¶ 8. All this work, ***for only one of the 19 topics*** in HCA's re-issued subpoena.

Topic 2(b)'s breadth underscores another of the subpoena's fatal flaws: HCA cannot possibly "actually cover" all 19 topics during a single 4-hour deposition. In granting Lifepoint's prior motion to quash without prejudice, the Court instructed that any re-issued subpoena must be limited to "the particularized lists of topics [that HCA] actually intend[s] to cover." ECF #28 (Order) at 19. Yet HCA cannot possibly inquire into Topics 2(b), 2(e), and 2(g) (the existence and negotiation of multiple contractual provisions) across all 165 contracts in only 4 hours. So, HCA surely cannot cover the *remaining* subparts of Topics 2 and *all* of Topics 1, 3, and 4. *See, e.g.*, ECF #32-1 (re-issued subpoena) at Topic 2(f) ("Whether You contract as part of a health system and whether negotiations included the discussion of or request to include all or some of Your Facilities and/or services in a particular Plan and, if so, the origin of that inclusion."), Topic 3(a) ("The opening/expansion/acquisition or closure/reduction of inpatient or outpatient Facilities in the Relevant Region."), Topic 4(d) ("Your knowledge of the competitors, services, and Facilities that You view as comparable Providers, including their market shares, competitive strengths, and

---

[3] Stated another way, the time limit of 4 hours on a deposition only limits the cost burden of the deposition day; it is the scope of the topics that dictates the cost and time burden on Lifepoint to prepare for the deposition. That scope remains unduly burdensome on non-party Lifepoint.

competitive weaknesses."). Lifepoint should not be required to bear the burden of preparing its executives to memorize the answers to questions that, given the 4-hour limit, will never be asked.

Although HCA may point to its proposal from May 20, 2025 (ECF #32-2 (HCA letter), any time-saving benefits of that proposal are illusory. That is because HCA expressly reserved its right to ask ***all questions*** that fall within the subpoena's 19 topics, such that Lifepoint would remain obligated under Rule 30(b)(6) to prepare its executives on all topics. Although HCA offered to provide an (unlimited) set of contracts in advance of the deposition and direct Lifepoint to certain contractual provisions, HCA also expressly reserved the right "to ask additional questions about each contract or contractual provision." *Id.* Similarly, HCA proposed sharing "exemplar questions/topics" for Topics 3 and 4 before the deposition, but it reserved the right "to ask additional questions about such topics." *Id.* And because Lifepoint's counsel is currently reviewing 25,011 documents for potential production to Defendants, HCA's offer to limit questions "to the documents produced" (*see id.*) is no limitation at all.[4]

Also importantly, the re-issued deposition subpoena contains topics for which the Court quashed Defendants' *documents* subpoena—and which, therefore, are beyond any allowable scope. *See* ECF #28 (Order) at 19 n.14 (granting "greater latitude in the documents [Defendants] seek" and holding that any depositions "should be more limited"). Specifically, the Court quashed all document requests in paragraphs 14-19 of the original document subpoenas except a "limited grant" for "business planning and assessments." *Id.* at 11-14. Yet, Topics 4(b), 4(c), and 4(d) of

---

[4] Notably, even the offer to provide exhibits ahead of the deposition (although no specified time period was offered) is moot as it was conditioned only on Lifepoint waiving its right to file a motion based on the scope of the subpoena, which Lifepoint has now done to preserve its rights and seek to redress the undue burden placed upon it.

the re-issued deposition subpoena would require Lifepoint executives to testify on topics that the Court has already quashed for the production of documents, as shown below:

| Re-issued Topics (Re-Issued Deposition Subpoena) | Quashed Topics (Document Subpoena) |
|---|---|
| Topic 4(b): "Whether and how You compete with Mission/HCA NC and any of its Facilities or Providers." | Topic 16: "All documents concerning competition among other health care providers in the Relevant Region . . . ." |
| Topic 4(c): "Whether and how You compete with other Providers and Facilities in the Relevant Region." | Topic 17: All documents discussing competition for inpatient, outpatient, and/or physician services in the Relevant Region |
| Topic 4(d): "Your knowledge of the competitors, services, and Facilities that You view as comparable Providers, including their market shares, competitive strengths, and competitive weaknesses." | |

In short, re-issued Topics 4(b)-4(d) falls squarely within Topics 16 and 17 of the document subpoenas, which the Court quashed. Because any deposition "should be more limited" than the documents produced (ECF #28 (Order) at 19 n.14), these topics are off-limits. Moreover, Topics 4(b)-4(d) call for some of Lifepoint's most highly confidential information—further reason to bar discovery into these issues. *See* Fed. R. Civ. P. 45(d)(3) (empowering courts to quash subpoenas that require "disclosing a trade secret or other confidential research, development, or commercial information"); *Virginia Dep't of Corr.*, 921 F.3d at 189 (holding that one of the "cognizable burdens" of a subpoena is the "inva[sion] [of] privacy or confidentiality interests").[5]

Finally, any deposition of Lifepoint's executives on the re-issued subpoena topics would be largely (if not entirely) cumulative of Lifepoint's extensive document production. In granting

---

[5] The confidentiality protective order in this action does not sufficiently alleviate these risks. "As courts have recognized, sometimes even the most rigorous efforts of the recipient of [sensitive] information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *Virginia Dep't of Corr.*, 921 F.3d at 193 (internal quotation marks omitted). "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Id.*

Lifepoint's motion to quash the original deposition subpoena, the Court held that the deposition topics "mirror[ed] the document requests," which made Defendants' failure to explain the topics' probative value particularly "glaring." *Id.* at 17; *see also Virginia Dep't of Corr.*, 921 F.3d at 194 (holding that "[i]f [a non-party's] document production has already provided the substantive information . . . , then a Rule 30(b)(6) deponent would likely just repeat that same information"). The same deficiency exists here. HCA can review the documents for any answers it needs.

HCA should not be given a third bite at the apple. Because Lifepoint has already incurred an enormous, uncompensated burden in responding to Defendants' overbroad subpoenas, because HCA's re-issued subpoenas would require Lifepoint's executives to memorize the answers to many questions that would never be asked, and because those answers are already contained in Lifepoint's extensive document production, the re-issued subpoena should be quashed.

**B.    In the alternative, the subpoena topics should be substantially narrowed, and HCA should be ordered to pay Lifepoint's fees and costs (including diverted employee time) for preparing its executives to testify on the narrowed topics.**

District courts have broad authority to craft orders that protect non-parties from undue burden or expense, including by "forbidding the . . . discovery," requiring the "allocation of expenses," or "limiting the scope of . . . discovery to certain matters." *See* Fed. R. Civ. P. 26(c)(1). If the Court does not quash the re-issued deposition subpoena in its entirety, Lifepoint respectfully submits that the Court should exercise its powers under Rule 26(c)(1) to substantially narrow the scope of the subpoena and require HCA to shoulder the associated costs.

In particular, Lifepoint respectfully requests that the Court order that HCA must disclose to Lifepoint no more than 10 documents at least 10 days before any deposition, and that Lifepoint's obligations to prepare a witness for testimony be limited to those 10 documents. In all events, the Court should strike Topic 4 in the re-issued subpoena as violating the Court's directive that any

deposition be "more limited" than the documents produced. *See* ECF #28 (Order) at 19 n.14. This is the same reasonable proposal that Lifepoint made to HCA. *See* ECF #32-3 (Lifepoint letter).

In addition, and in all events, Lifepoint respectfully requests that the Court order HCA to pay all attorneys' fees, costs, and expenses associated with the re-issued deposition subpoena, including for the value of Lifepoint's employee time. Lifepoint has already incurred more than $140,000 in outside counsel fees that are not subject to the Court's cost-sharing order regarding Lifepoint's document gathering and production since April 8, 2025. *See* ECF #32 (Holt Decl.) ¶ 12. Lifepoint respectfully submits that its $140,000 in outside counsel fees to respond to third-party subpoenas is more than sufficient cost-sharing for a non-party—especially where the Court has already found that Defendants' subpoenas were grossly overbroad and burdensome. ECF #28 (Order). For the same reasons the Court ordered cost sharing for producing documents, Lifepoint submits that cost sharing is appropriate to ensure HCA's efficiency regarding any deposition.

## C. HCA should be ordered to pay Lifepoint's attorneys' fees in bringing this motion.

Lifepoint also requests that the Court order HCA to pay Lifepoint's reasonable attorneys' fees in bringing this motion. *See* Fed. R. Civ. P. 26(c)(3) (incorporating Rule 37(a)(5) regarding fee shifting for motions for protective orders); Fed. R. Civ. P. 37(a)(5) ("If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.").

## V. CONCLUSION

In keeping with the "special solicitude" in favor of non-parties like Lifepoint, *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 194 (4th Cir. 2019), the Court has already found there "no doubt" that Lifepoint has "incurred significant expense" in responding to Defendants' subpoenas,

and that "the discovery sought by the HCA Defendants exceeds what is proportional to the needs of the case," ECF #28 (Order) at 15-16. Yet HCA's re-issued deposition subpoena to Lifepoint would require Lifepoint's executives to spend countless hours and incur tens of thousands of dollars of additional attorneys' fees preparing to answer questions that would never be asked, when those answers are already provided in Lifepoint's document production. The re-issued subpoena should be quashed. At minimum, the re-issued subpoena should be narrowed substantially and the Court should impose cost-sharing on HCA for the re-issued subpoena. In all events, Lifepoint requests that the Court order HCA to pay Lifepoint's attorneys' fees in bringing this motion.

Respectfully submitted,

*/s/ Ryan T. Holt*
Ryan T. Holt (TN Bar No. 30191)
Lauren Z. Curry (TN Bar No. 30123)
SHERRARD ROE VOIGT HARBISON, PLC
1600 West End Avenue, Suite 1750
Nashville, Tennessee 37203
(615) 742-4200
rholt@srvhlaw.com
lcurry@srvhlaw.com

*Attorneys for DLP Rutherford Regional Health System, LLC, DLP Harris Regional Hospital, LLC, DLP Haywood Regional Medical Center, LLC , DLP Swain County Hospital, LLC, and Lifepoint Corporate Services, General Partnership*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2025, a true and correct copy of the foregoing was served via the Court's CM-ECF system, which serves all registered users in this action.

*/s/ Ryan T. Holt*
Ryan T. Holt